## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| ROBERT D. CARR, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ANHEUSER BUSCH COMPANIES, INC., | ) |
| | ) |
|     Defendant. | ) |

## COMPLAINT

Comes now Plaintiff, Robert D. Carr ("Plaintiff") and for his Complaint states as follows:

## COUNT I

## CLAIM FOR SEVERANCE BENEFITS UNDER ERISA

1.    Plaintiff's claim under Count I arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1001 et seq., and more particularly 29 U.S.C. §1132(a)(1)(B); Section 502(a)(1)(B) of ERISA.

2.    Plaintiff seeks recovery of certain severance benefits due Plaintiff as a qualified participant in Defendant's employee welfare benefit plan covered under ERISA.

3.    This Court has jurisdiction of this Count I claim under 29 U.S.C. §1132(e).

4.    Venue is proper in the Eastern District of Missouri under 29 U.S.C. §1132(e)(2) in that Defendant may be found in this District and the breach took place in this District.

5.      Plaintiff, Robert D. Carr, currently resides in St. Louis County, Missouri, which is located in the Eastern District of Missouri.

6.      Defendant Anheuser Busch Companies, Inc. is a corporation organized and existing under the laws of the State of Delaware, and at all times mentioned herein has done business and maintained offices for the conduct of its business in the Eastern District of Missouri.

7.      Plaintiff had been employed by Defendant for more than 25 consecutive years - - from May, 1984 until he was fired by Defendant on June 4, 2009.

8.      At the time of Plaintiff's termination from employment on June 4, 2009, he had been a salaried employee holding the job title of Senior Manager, Accounting.

9.      At the time of Plaintiff's termination, Defendant was the sponsor and administrator of an ERISA governed employee welfare benefit plan that provided severance benefits to certain of Defendant's employees (the "Severance Pay Program" or "Program").

10.     At and prior to the time of Plaintiff's termination from employment on June 4, 2009, he was a qualified participant in Defendant's Severance Pay Program.

11.     Under the Severance Pay Program, upon Plaintiff's involuntary termination from employment he was entitled to: (i)  seven months of severance pay (based on Plaintiff's normal monthly base salary) in light of his age and years of service (an amount in excess of $90,000), and (ii) continuation of his group medical, dental and vision coverage for three months under Defendant's group insurance plan.

2

12.     Defendant has wrongfully refused to pay Plaintiff his severance benefits due under the Severance Pay Program following Plaintiff's termination from employment.

13.     The Summary Plan Description for the Severance Pay Program in effect when Plaintiff's employment terminated included the following provision:

> For Benefits
>
> Benefits are payable if your employment with a Participating Employed named above terminates as a result of the following:
>
> 1.    Reorganization, or
>
> 2.    Elimination of position, including, but not limited to a reduction in staff resulting from decreased workload or budget constraints, or
>
> 3.    Lack of a position following a return from medical leave of absence or work-related injury or illness, or
>
> 4.    Involuntary separation from service due to unsatisfactory job performance for reasons other than willful misconduct

14.     Plaintiff had been an exemplary employee for Defendant for more than 25 years and was consistently promoted to increasingly responsible positions with Defendant.

15.     On June 4, 2009, Plaintiff was terminated by Defendant for allegedly violating company policy.

16.     During the review of Plaintiff's claim for severance benefits, Plaintiff submitted his evidence that the previous day, June 3, 2009, Plaintiff was at work in his fifth floor office when he went to the fourth floor (which had been vacated by all employees) in search of a replacement docking station for use on his laptop computer in his office. While there, he observed a set of speakers (in a vacated office not being used



3

by anyone) that Plaintiff thought could be used in his office. Plaintiff placed the speakers in a box on the fourth floor to carry them up to his office. Plaintiff never removed the speakers from the fourth floor. Plaintiff continued his search for a docking station, and was subsequently confronted by a security guard for Defendant who accused Plaintiff of stealing Company property. Plaintiff was terminated from employment by Defendant the next day, June 4, 2009.

17.    During the claim review process, Plaintiff also submitted his evidence that his only intention was to use the speakers in his fourth floor Company office in connection with his work for the Company.

18.    During June, 2009, shortly after Plaintiff's termination on June 4, 2009, Defendant informed Plaintiff that he would not receive any severance benefits under the Severance Pay Program.

19.    In accordance with the Claims Procedure set forth in the Severance Pay Program, by letter dated June 25, 2009, Plaintiff filed a claim with Kathleen T. Boulicault, who was Defendant's "Senior Director, Global Compensation & Relocation, Anheuser-Busch Companies" ("Senior Director") requesting all severance benefits due under the Program. Ms. Boulicault was at all times an employee of Defendant.

20.    By letter dated July 1, 2009, Defendant's Senior Director, who was the Program Administrator, denied Plaintiff's claim for severance benefits, stating in part:

> Our records indicate you were given notice of the termination of your employment on June 4, 2009. Under the current Anheuser-Busch Severance Pay Program, benefits are not payable if the actions leading to your termination are considered willful misconduct in violation of company policy. Because your actions were deemed as willful misconduct, you are not entitled to benefits under the Program.

4

The Senior Director's July 1, 2009 denial did not identify any specific conduct that allegedly constituted willful misconduct.  The denial also did not identify or produce the "company policy" relied upon in the denial.

21.     On August 17, 2009, Plaintiff, through legal counsel, asked the Senior Director to provide copies of various documents in connection with Plaintiff's appeal, including investigation reports, statements, the Company Policy Plaintiff allegedly violated and copies of all other documents (submitted, considered or generated) which the Company relied upon in making the claim decision.  A true copy of this request is attached as part of Plaintiff's Exhibit 1 attached hereto and incorporated herein.

22.     On August 21, 2009, the Senior Director replied in writing to the request for documentation by stating that she relied on only one document, an Employee Separation Report.  The Senior Director's response is attached as part of Exhibit 1 hereto along with the one page Separation Report.  (Plaintiff has redacted his address, date of birth and monthly salary from the Separation Report for privacy purposes).  The only "reason" for discharge set forth in the Separation Report was the following; "BT Disch-Viol Co Policy/Rule/Reg."  The Senior Director never produced any other documents to Plaintiff in response to Plaintiff's counsel's August 17, 2009 request.

23.     In accordance with the Claims Procedures of the Severance Pay Program, by a writing dated August 27, 2009, Plaintiff appealed the Senior Director's claim denial setting forth various grounds why Plaintiff was entitled to severance benefits.  In that writing, Plaintiff set forth evidence indicating that he had intended to use the speakers for business purposes in his office, that the speakers were never removed from the fourth

floor space, that he was being wrongfully accused and he did not violate any company policies.

24.     By letter dated December 21, 2009, Defendant denied Plaintiff's final appeal under the Severance Pay Program. The December 21, 2009 denial of Plaintiff's claim made by Defendant's employee, Jeff Karrenbrock, Defendant's "Vice President, Total Rewards," stated that Plaintiff was terminated for violating company policy:

> My review reveals that Mr. Carr was terminated for violating company policy. Specifically, Mr. Carr was terminated for violating Policy Number I-4, Section III.K. Mr. Carr's termination for violating a company policy is deemed to constitute willful misconduct, and such a termination is not an enumerated circumstance under which severance is provided.
> …
> Since Mr. Carr was terminated for a reason that constituted willful misconduct, he is not eligible for severance benefits under the Program.

25.     The December 21, 2009 denial stated that it was "the Program's final decision on this matter and it is non-reviewable" and informed Plaintiff of his right to bring an action under ERISA within one year. At this point, Plaintiff had exhausted all available administrative remedies.

26.     The December 21, 2009 denial did not describe the provisions or enclose the Policy Number I-4, Section III.K referred to therein.

27.     After receipt of the December 21, 2009 denial, Plaintiff's counsel by letter dated December 31, 2009, again asked the Program to furnish a copy of the Company policy cited by the Program representatives in their denials. Finally, after the appeal process had been completed, by letter dated January 5, *2009* [sic-2010], Defendant's Jeff Karrenbrock furnished a copy of Defendant's Policy number I-4.

28.     Section III of said Policy number I-4 provided examples of actions for which an employee may be dismissed or suspended, and III.K provided in its entirety as follows: "Misappropriation or attempted misappropriation of Company property."

29.     The December 21, 2009 letter reiterated Defendant's position that the only relevant documentation in connection with Plaintiff's appeal was the one page Separation Report:

> In your August 27, 2009 letter, you allege that the Program Administrator failed to provide copies of the information relevant to its determination to deny Mr. Carr severance.  Ms. Boulicault, the Program Administrator, provided you with a copy of Mr. Carr's Employee Separation Report, which was the only document relied upon in making her determination to deny Mr. Carr's severance benefits.  Ms. Boulicault did not reply upon, review or consider any other document as part of the claim determination process, and we have determined that there were no other "relevant" documents (as determined under Labor Reg. §2560.503-1(m)(8)) which must be provided with respect to Mr. Carr's claim.

30.     Defendant's Program Administrator and Mr. Karrenbrock erroneously interpreted or applied the terms of the Severance Pay Program in denying Plaintiff severance benefits.  Plaintiff's conduct and intent with regard to the speakers in the vacant office did not constitute "willful misconduct" or the "misappropriation or attempted misappropriation of Company property."

31.     Defendant's reliance solely on the Employee Separation Report reflects that Defendant merely "rubber-stamped" a decision made by the employee who terminated Plaintiff from employment.  That document did not establish or constitute substantial evidence that Plaintiff engaged in willful conduct and reflects that Defendant, the Program Administrator and Mr. Karrenbrock failed to consider evidence submitted by Plaintiff establishing that Plaintiff did not engage in any willful misconduct and did not misappropriate or attempt to misappropriate Company property.

32.    Plaintiff is informed and believes that the terms of the Severance Pay Program set forth some degree of discretion to the Program Administrator in determining whether or not a former employee shall be entitled to severance benefits under the Program.

33.    Defendant, the Program's Administrator and the reviewing decision-maker on appeal, had a conflict of interest in regard to Plaintiff's claim due, in part, to the fact that Defendant was the Plan Sponsor, Defendant administered the Plan and Program, Defendant processed all claims, Defendant's own employees made all claim determinations for benefits and appeals, and Defendant had a pecuniary interest in the outcome because Defendant was responsible for paying for Plaintiff's claim in issue here.

34.    There were procedural irregularities in the appeal process and Defendant's Program failed to provide Plaintiff a reasonable opportunity for a full and fair review in violation of 29 U.S.C. §1133 for one, several or all of the following reasons:

A.    Defendant produced only a one page document to Plaintiff in the course of the entire administrative process, despite Plaintiff's requests for various relevant materials, all in violation of the Severance Pay Program appeal procedures as well as 29 U.S.C. §1133 and 29 CFR 2560.503-1(h)(2)(iii) and (iv).

B.    Defendant's Senior Director never identified or produced the "company policy" referred to in her denial determination.

C.    Defendant's Vice President, Total Rewards identified the "company policy" by section number in his denial, but did not provide a copy of the company policy until after the appeal process had been completed.

8

D.      The Senior Director (the Program Administrator) stated that the only document she relied upon in making the decision to deny Plaintiff's claim was the one page Employee Separation Report.  This reflects that the Program Administrator did not engage in any meaningful review of the claim but merely "rubber stamped" a decision made by someone in human relations or elsewhere in the Company to terminate Plaintiff without the Program Administrator making a full and fair review of Plaintiff's evidence.

E.      The Vice President, Total Rewards confirmed in his December 21, 2009 decision that other than the one page Employee Separation Report, Ms. Boulicault (the Program Administrator) "<u>did not rely upon, review or consider any other document as part of the claim determination process.</u>"  (emphasis added).  This reflects that the Program Administrator did not consider or review all relevant materials or information (including Plaintiff's evidence of what occurred on June 3, 2009), but merely relied upon, considered or reviewed a one page document that simply gives the Plaintiff's reason for dismissal as "BT Discgh – Viol Co Policy/Rule/Reg."  (Plaintiff's Exhibit 1 at pg. 3, attached).

F.      Similarly, the Vice President, Total Rewards' December 21, 2009, appeal denial reiterated Defendant's position that there were no other relevant documents that must be produced to Plaintiff other than the one page Employee Separation Report.  This position reflects that he did not rely on any reports by the security guard, by Plaintiff, by any human relations investigation or any other evidence or materials.

G.      To the extent the Senior Director and/or Vice President Total Rewards relied on investigative reports, statements or other evidence, Defendant and the

Program wrongfully withheld those materials from Plaintiff in the review process and thereby prevented Plaintiff from fully evaluating his appeal and providing rebuttal evidence.

35.    The Program and Defendant's failure to furnish requested relevant documentation and information, failure to comply with its own appeal procedures, failure to review or consider evidence relating to the events leading to Plaintiff's termination, and conflict of interest all reflect a biased, unfair, arbitrary and improper review of Plaintiff's claim.   Accordingly, no deference should be given to the benefit claim determination.

36.    Furthermore, even if an abuse of discretion review was given to the benefit claim determination, that determination was arbitrary, capricious and unsupported by substantial evidence.

37.    Rather, the decision was based upon rank speculation or some other improper motive.  There is no reasonable basis or substantial evidence to find that a 25-year employee with an impeccable career who moved a set of speakers a few feet in an office on the business premises thereby misappropriated or attempted to misappropriate Company property or otherwise engaged in willful misconduct.

38.    By reason of Defendant's improper denial of severance benefits, Plaintiff has been denied his severance pay (seven months of salary) and had to expend monies to procure his own health insurance coverage during the three month period that he should have been covered under Defendant's group insurance plan.

39.    Plaintiff has incurred and will continue to incur attorney's fees in bringing and prosecuting this action to recover the severance benefits due.

WHEREFORE, Plaintiff Robert D. Carr prays that this Court enter judgment against Defendant for the full amount of severance benefits and/or other damages due Plaintiff under the Severance Pay Program, with prejudgment interest, plus reasonable attorney's fees, costs of suit and any and all other relief as deemed appropriate.

## COUNT II

### (State Law Claim for Failure to Pay Accrued Vacation Pay)

Comes now Plaintiff and for Count II of his Complaint states as follows:

40.     Plaintiff incorporates paragraphs 5-8 and 14-17 above as if fully restated herein.

41.     The Court has pendent or supplemental jurisdiction of this Count II claim because it arises from Plaintiff's termination from employment described in Count I above.

42.     Plaintiff was a full time salaried employee of Defendant at all times during 2008 through his termination date on June 4, 2009.

43.     In accordance with Defendant's policies, practices and customs, Plaintiff had earned six weeks of accrued vacation pay for the 2008 calendar year.  Plaintiff was never paid for his six weeks of accrued vacation pay.

44.     In accordance with Defendant's policies, practices and customs, Plaintiff was entitled to all accrued, unpaid vacation pay upon termination regardless of the Defendant's stated grounds for Plaintiff's termination.

45.     After Plaintiff was terminated on June 4, 2009, Defendant paid Plaintiff for his accrued vacation earned during 2009.

46.     Despite demand, Defendant has failed and refused to pay Plaintiff for his six weeks of earned vacation pay for the 2008 employment year, which is an amount due in excess of $15,000.

WHEREFORE, Plaintiff Robert D. Carr prays that the Court enter judgment against Defendant Anheuser Busch Companies, Inc. for the full amount of six weeks vacation paying owing to Plaintiff since June 5, 2009, with prejudgment interest, costs of suit and any and all further relief as deemed appropriate.

COPELAND THOMPSON FARRIS PC

STEPHEN C. HIOTIS #3404
231 S. Bemiston, Suite 1220
Clayton, MO 63105
(314) 726-1900 (Telephone)
(314) 726-2361 (Facsimile)
hiotis@ctfpc.com
Attorneys for Plaintiff