UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBERT D. CARR, | ) |
|     Plaintiff, | ) |
| v. | )    No. 4:10-CV-1729 (CEJ) |
| ANHEUSER-BUSCH COMPANIES, INC., | ) |
|     Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiff's motion to compel defendant to produce documents. Defendant opposes plaintiff's motion and the issues have been fully briefed. Plaintiff has also filed a motion to amend his motion to compel to which defendant has not objected. The Court will therefore consider the motion as amended.

I. **Background**

Plaintiff was employed by the defendant in its accounting department until his termination on June 4, 2009. Plaintiff's claim for severance benefits was denied by defendant, on the ground that his termination was for "willful misconduct in violation of company policy." Plaintiff now brings this action pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq., challenging the denial of benefits.

Plaintiff served defendant with a request for production seeking the entire administrative record for the appeal of the denial of his severance benefits claim. Defendant has submitted an amended privilege log describing certain documents it has withheld from production based on the attorney-client and work-product privilege. The

documents have been submitted to the Court for *in camera* review. Plaintiff argues that these documents, if related to the administration of an ERISA benefits plan, must be disclosed under the "fiduciary exception" to the attorney-client privilege.

II. Discussion

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Rule 26(b)(1), Fed.R.Civ.P. The attorney-client privilege affords a client the right to refuse to disclose "communications between attorney and client made for the purpose of obtaining legal advice." In re United States, 590 F.3d 1305, 1309 (Fed. Cir. 2009) (quoting Genentech, Inc. v. United States Int'l Trade Comm'n, 122 F.3d 1409, 1415 (Fed. Cir. 1997)). The privilege "encourag[es] full and frank communication between attorneys and their clients" and "recognizes that sound legal advice . . . depends upon the lawyer's being fully informed by the client." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). The privilege "belongs to the client, who alone may waive it." In re United States, 590 F.3d at 1310 (quoting In re Seagate Tech., LLC, 497 F.3d 1360, 1372 (Fed. Cir. 2007) (*en banc*)).

While "[t]he attorney-client privilege is the oldest of the privileges for confidential communications known to the common law," it is not "an ironclad veil of secrecy." Id. (citations omitted). Several courts have recognized the existence of a "fiduciary exception" to the attorney-client privilege. See Geissal v. Moore Med. Corp., 192 F.R.D. 620, 624 (E.D. Mo. 2000) (fiduciary exception is "well established" and has been applied in cases involving review of the decisions of ERISA plan administrators). In the ERISA context, the fiduciary exception provides that communications between an attorney and a plan administrator or fiduciary are not protected from disclosure to the beneficiaries. The exception is based on two rationales. First, "when an attorney

advises a plan administrator or other fiduciary concerning plan administration, the attorney's clients are the plan beneficiaries for whom the fiduciary acts, not the plan administrator." Halbach v. Great-West Life & Annuity Ins. Co., 2006 WL 3803696 *2, No. 4:05-CV-2399 ERW (E.D. Mo. Nov. 21, 2006) (quoting Wildbur v. Arco Chem. Co., 974 F.2d 631, 645 (5th Cir. 1992)). Second, an ERISA fiduciary has an obligation to provide full and accurate information to the plan beneficiaries regarding administration of the plan, including any communications with an attorney that are intended to assist in the administration. In re Long Island Lighting Co., 129 F.3d 268, 271-72 (2d Cir. 1997).

The fiduciary exception applies only to communications that involve plan administration. United States v. Mett, 178 F.3d 1058, 1064 (9th Cir. 1999). Thus, when a plan fiduciary retains counsel in order to defend himself against plan beneficiaries, the privilege remains intact. Id. This is because the plan administrator is no longer acting on behalf of the disappointed beneficiary but in his own interests or in the interests of the other beneficiaries. Id. at 1063.

In order to determine whether a particular attorney-client communication concerns either a matter of plan administration or legal advice for the fiduciary's own benefit, both the content and the context of the communication must be examined. Smith v. Jefferson Pilot Fin. Ins. Co., 245 F.R.D. 45, 48 (D. Mass. 2007). Thus, when it is asserted that the communication consisted of legal advice for the fiduciary's own benefit, the focus is on whether the litigation involving the fiduciary is pending or imminent, as opposed to a general fear of liability. Black v. Bowes, 2006 WL 3771097 at *3 (S.D.N.Y. Dec. 21, 2006). "Frequently, the key question is whether the communication was made before or after the decision to deny benefits." Smith, 245

F.R.D. at 48 (quoting Asuncion v. Metropolitan Life Ins. Co., 493 F.Supp.2d 716, 720-21 (S.D.N.Y. 2007)); see also Geissal, 192 F.R.D. at 625-26 (discussing pre- and post-decisional legal advice). Courts have rejected the argument that communications made before a claim is denied should be protected, noting that "whenever the administration of a plan involves the denial of a beneficiary's claim . . . all of the antecedent, pre-decisional legal advice of counsel would be subject to the attorney-client privilege and not available for review by the beneficiaries of the plan, including the disappointed beneficiary. This contradicts the principle that the plan's administrator or trustee administers the plan in the beneficiaries' best interests." Id.

Here, defendant has withheld the disputed documents under claims of attorney-client and work-product privileges. While the work-product privilege is "distinct from and broader than the attorney-client privilege," In re Green Grand Jury Proceedings, 492 F.3d 976, 980 (8th Cir. 2007) (citation omitted), the analysis that governs the application of the fiduciary exception is the same in both contexts. See Geissal, 192 F.R.D. at 625.

Defendant argues that documents created after the initial denial of plan benefits are not subject to the fiduciary exception because, at that point, "the prospect of litigation [is] sufficient to erect the attorney work product doctrine as a bar to the subject information." Buzzanga v. Life Ins. Co. of North America, 2010 WL 1292162 at *3 (E.D. Mo. April 5, 2010). Plaintiff, on the other hand, argues that such a rule would undermine the duty of disclosure owed to plan beneficiaries because plan administration includes the appeal process prior to the final decision. In *Buzzanga*, this Court used the timing of the document relative to the decision to deny benefits in determining whether the fiduciary exception applied. Buzzanga, 2010 WL 1292162 at

*3. However, the Court also noted that "[t]he inquiry centers on whether the purpose of the communication was legal advice regarding the liability of a plan administrator in imminent or pending litigation, as opposed to advice concerning a general fear of liability or advice concerning plan administration itself." Buzzanga, 2010 WL 1292162 at *3.

Despite defendant's argument to the contrary, this case is distinguishable from Buzzanga. The plaintiff in that case waited more than a year before filing an appeal to the initial benefits denial. Id. Thus, the Court found, the decision to deny plaintiff's claim had become final. Id.; See also Thies v. Life Ins. Co. of North America, ---F.Supp.2d ----, 2011 WL 482876 (W.D. Ky. 2011) (distinguishing Buzzanga on similar grounds). Here, plaintiff timely filed his appeal to the initial benefits denial. As such, the decision to deny his benefits claim could not have been "final" without rendering the appeal procedure guaranteed by the terms of the plan meaningless. This reasoning is also consistent with Geissal where this Court held that neither plaintiff's hiring of an attorney nor their appeal of the initial benefits denial diminishes the fiduciary exception. Geissal, 192 F.R.D. 620.

The Court, having determined that it must examine the content of defendant's allegedly privileged documents, ordered an *in camera* review of the withheld communications. (Doc. #28). Defendant submitted two documents that included an October 9, 2009 email and another document that did not appear to match the description of the December 21, 2009 email described in its privilege log. Because of the of apparent discrepancy, the Court ordered defendant to submit the correct document or otherwise explain why the document submitted did not match the description in its privilege log. (Doc. #29). In response, defendant submitted an

amended privilege log and three emails between the plan administer and associate general counsel in defendant's legal department. The first two emails were sent on December 10, 2009. The third email was sent on December 21, 2009. In the interest of efficiency, the Court will consider plaintiff's motion to compel as seeking these three newly-disclosed communications (collectively, the "December 2009 emails") that were previously described as a single email dated December 21, 2009.

### The October 9, 2009 Email

The October 9, 2009 email was sent by Toni Landreth, defendant's associate general counsel, to Jeff Karrenbrock, the plan administrator. The email provides "some guidance for use while reviewing an appeal of a denied claim." Defendant has claimed that this document is protected by the both the attorney-client and work-product privileges. As discussed above, the analysis as to whether the fiduciary exception applies is the same for both privileges. See Geissal, 192 F.R.D. at 625; Buzzanga, 2010 WL 1292162 at *4.

The October 9 communication was generated after the initial denial of plaintiff's benefits claim. However, the content of the email relates directly to how the plan administrator interprets and conducts the appeal procedure contained in the benefits plan. And nothing in the email references future litigation strategy, the merits of plaintiff's claim, or potential liability. Further, the communication was not between defendant and counsel retained for the purpose of litigation, but an internal communication between a plan administrator and defendant's legal department.[1]

---

[1]The Court does not suggest that the attorney-client and work-product protections do not apply in the context of in-house legal advice, but this fact may be probative when evaluating defendant's expectation of litigation. See Geissal, 192 F.R.D. at 625; Mett, 178 F.3d at 1063-64.

Based upon the content and context of the withheld document, the Court finds that this email is subject to the fiduciary exception because it is not a communication that constitutes advising the plan and its beneficiaries as parties adverse to plaintiff. Rather, it is advising the plan administrator as to its duties owed to all beneficiaries, plaintiff included.

**The December 2009 Emails**

The December 2009 emails also involve an exchange between Jeff Karrenbrock and Toni Landreth. The emails discuss the content and drafting of the December 21, 2009 letter from Karrenbrock to plaintiff affirming the initial denial of severance benefits on appeal. Defendant claims the documents are protected under both the attorney-client and work product privileges.

In contrast to the October 9, 2009 email, the December 2009 emails relate to the substantive merits of plaintiff's individual claim and the content of the final decision letter denying his severance benefits, not advice as to the procedural duties owed to each beneficiary. The drafting of this final decision is the last step in the plan administration process. At this point, plaintiff's interest had become sufficiently adverse to that of the plan administrator's because the final decision had effectively been made and plaintiff's only recourse, should he disagree with the plan administrator's decision, was litigation. As such, the Court finds that the December 2009 emails are not subject to the fiduciary exception and are protected from disclosure under the attorney-client and work-product privileges.

IV. Conclusion

The Court finds that the October 9, 2009 email described in defendant's privilege log is covered by the fiduciary exception to the attorney-client and work-product

privileges. However, with respect to the December 2009 emails, the Court finds that they are not subject to the fiduciary exception and were properly withheld under the attorney-client and work-product privileges.

Accordingly,

**IT IS HEREBY ORDERED** that the motion by plaintiff to compel defendant to produce documents withheld under a claim of privilege [Doc. #23] is **granted** with respect to the October 9, 2009 email, but **denied** with respect to the December 2009 emails.

**IT IS FURTHER ORDERED** that defendant shall produce the October 9, 2009 email described in its privilege log no later than **June 10, 2011**.

**IT IS FURTHER ORDERED** that the motion by plaintiff to amend his motion to compel [Doc. #25] is **granted**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of June, 2011.