UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBERT D. CARR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:10-CV-1729 (CEJ) |
| ) | |
| ANHEUSER-BUSCH COMPANIES, INC., ) | |
| ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on parties' cross motions for summary judgment on Count I of the complaint. The motions have been fully briefed and are ready for disposition.

Also before the Court is the plaintiff's motion to strike affidavits submitted by defendant in support of its summary judgment motions. Because the Court has not considered the disputed affidavits, the motion to strike is moot.

I.  Background

Plaintiff brings this action to recover severance benefits and vacation pay that he claims were owed to him. In Count I, plaintiff claims that defendant's denial of his claim for severance benefits was an abuse of discretion, in violation of 29 U.S.C. § 1132(a)(1)(b). Plaintiff also claims that defendant failed to afford him a full and fair review of his claim, in violation of 29 U.S.C. § 1133(2).

Plaintiff was employed by defendant from May 1984 until his termination on June 4, 2009. At all relevant times, plaintiff was a qualified participant in the defendant's severance pay program, an employee benefits plan governed by the Employee

Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, et seq.

The plaintiff's termination was precipitated by his removal of a pair of wall-mounted speakers from a vacant office in the building where he worked. The police were called and plaintiff was interviewed, but no criminal charges were filed. Defendant viewed plaintiff's actions as an attempted misappropriation of company property and terminated plaintiff's employment for violating company policy.

**The Severance Pay Program**

Defendants have submitted the "Summary Plan Description for the Anheuser-Busch Companies, Inc. Severance Pay Program" (the SPD). The SPD provides that the Program will pay severance benefits to a qualified participant if his or her employment with defendant terminates as a result of:

> (1) Reorganization; or (2) Elimination of position, including, but not limited to a reduction in staff resulting from decreased workload or budget considerations; or (3) Lack of a position following a return from medical leave of absence or work-related injury or illness; or (4) Involuntary separation from service due to unsatisfactory job performance for reasons other than willful misconduct. Benefits are not payable if you resign or retire, transfer to the employ of any other Anheuser-Busch company (whether or not a Participating Employer), or your employment terminates for any other reason, including the sale, spin-off or closing or an existing company-owned operation, subsidiary, division or territory where you are offered employment in any capacity with a Participating Employer or any Anheuser-Busch company, new owner, or successor employer.

(Doc. #52-2 at p. 2). The SPD also provides that the "Program Administrator has the right to determine all questions that arise in interpreting the Program. The Program Administrator has complete and sole discretion to interpret the Program provisions and to determine any entitlement to benefits." Id. at p. 5.

The "Claims Procedure" section of the SPD describes the procedure for filing a claim for severance benefits and for appealing the denial of a claim. Among other

things, this section provides that a participant has 60 days in which to seek review of a claim denial. Upon request, the participant is to be provided all "relevant documents, records and information" that "(1) were relied on in making the decision on your claim, (2) were submitted, considered or generated in the course of making that decision, or (3) demonstrate that the decision was made in accordance with applicable Program documents in a manner that applies Program provisions consistently to similarly situated individuals (but excluding files on claims made by those individuals)." Id. If the appeal is denied, then the notice of the decision must contain specific reasons for the denial, refer to the specific Program provision on which the denial is based, and include a statement of the participant's right to bring an action under ERISA. The notice must also inform the participant that documents relevant to the decision will be provided upon request. The appeal decision is "final and non-reviewable." Id.

**Plaintiff's Request for Severance Benefits**

In a letter dated June 25, 2009, plaintiff made a formal request for payment of severance and other benefits. Plaintiff wrote, "I strongly disagree with the decision made to deny my severance benefits and strongly disagree with the reason articulated for my termination." In a letter dated July 1, 2009, Plan Administrator Kathleen Boulicault responded, stating, "Under the current Anheuser-Busch Severance Pay Program, benefits are not payable if the actions leading to your termination are considered willful misconduct in violation of company policy. Because your actions were deemed as willful misconduct, you are not entitled to benefits under the Program." (Doc. # 47-2). On August 17, 2009, plaintiff requested that Boulicault provide him copies of materials pertaining to the investigation and his termination, and

documents that were relied on in denying plaintiff's benefits claim. On August 21, 2009, Boulicault responded, acknowledging plaintiff's entitlement to documents she relied on in making the decision to deny his benefits claim and providing plaintiff a copy of an "Employee Separation Report" which states that plaintiff was discharged for violating company policy. Boulicault wrote, "As Plan Administrator, I consider employees who are terminated for violation of company policy to have engaged in willful misconduct." (Doc. # 47-4, p. 1).

By letter dated August 27, 2009, plaintiff appealed the denial of his claim. The letter set forth plaintiff's account of the incident that led to his termination and contained plaintiff's assertion that he did not violate company policy. Plaintiff further asserted that Boulicault disobeyed the terms of the severance pay program by failing to provide specific reasons for the denial of his claim and by failing to provide all documents that she relied on in making the decision. In a letter to plaintiff's counsel dated December 21, 2009, Jeff Karrenbrock, the executive handling the appeal, wrote that plaintiff's termination for violating a company policy constituted willful misconduct which made him ineligible for severance benefits. Karrenbrock wrote, "As more fully described below, I have independently reviewed the facts and circumstances of Mr. Carr's termination and found no reason to overturn Kathy Boulicault's July 1, 2009 decision to deny severance." (Doc. # 47-6). In response to the allegation that the Program Administrator failed to provide relevant documents, Karrenbrock wrote:

> Ms. Boulicault, the Program Administrator, provided you with a copy of Mr. Carr's Employee Separation Report, which was the only document relied upon in making her determination to deny Mr. Carr's severance benefits. Ms. Boulicault did not rely upon, review or consider any other document as part of the claim determination process, and we have determined that there were no other "relevant" documents (as determined under Labor Reg. § 2560.503-1(m)(8)) which must be

provided with respect to Mr. Carr's claim.

Id. Finally, Karrenbrock advised that this was the Program's final and non-reviewable decision.

Following receipt of the December 21, 2009 final decision, plaintiff requested and was provided a copy of the company policy cited by Karrenbrock as the basis for denying him severance benefits. The policy expressly prohibited misappropriating or attempting to misappropriate company property.

After plaintiff filed this action, defendant produced a complete copy of the administrative record pertaining to the benefits claim. Included in this record was a memorandum to Karrenbrock from John Burke, defendant's director of security. The memorandum is undated, but it addresses statements made in plaintiff's August 27, 2009 appeal of Boulicault's decision. In his affidavit, Karrenbrock states that he spoke with Burke and a manager of the company's security department "[i]n the course of investigating the facts relating to the denial of [plaintiff's] severance benefits." (Doc. # 52-1, p. 6). Karrenbrock was told that plaintiff knew that he should not have removed the speakers without permission and that the police were prepared to issue a warrant if the company decided to press charges. Based on the information the security personnel provided and Burke's memorandum, Karrenbrock concluded that plaintiff had violated company policy by misappropriating company property and that the denial of his request for benefits was appropriate.

II.  **Legal Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."

In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. United of Omaha Life Ins. Co. v. Honea, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

### III. Discussion

#### Legal Standard Under § 1132(a)(1)(B)

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). When, as is the case here, the plan gives the administrator discretion to determine benefit eligibility or construe the terms of the plan, the administrator's decision is reviewed for

an abuse of discretion. Janssen v. Minneapolis Auto Dealers Ben. Fund, 477 F.3d 1109, 1113 (8th Cir. 2006).

Under the abuse-of-discretion standard, the court asks whether the administrator's interpretation of the plan was reasonable. Phillips–Foster v. UNUM Life Ins. Co. of America, 302 F.3d 785, 794 (8th Cir.2002). An administrator's decision will be considered reasonable if "a reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision." King v. Hartford Life & Acc. Ins. Co., 414 F.3d 994, 999 (8th Cir. 2005). The Eighth Circuit has identified the following factors to be considered in this analysis: (1) whether the plan administrator's interpretation is consistent with the goals of the policy; (2) whether the interpretation renders any language in the policy meaningless or internally inconsistent; (3) whether the interpretation conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the administrator has interpreted the relevant term consistently; and (5) whether the interpretation is contrary to the clear language of the policy. Id. (citing Finley v. Special Agents Mut. Ben. Ass'n, Inc., 957 F.2d 617, 621 (8th Cir. 1992)). If the interpretation is reasonable, the court then examines whether the plan administrator reasonably applied that interpretation to the facts of the claim. Id. at 1014 (Gruender, J., dissenting); West v. Aetna Life Ins. Co., 171 F. Supp. 2d 856, 866 (N.D. Iowa 2001) (noting that the five-factor test is not "instructive" when reviewing the plan administrator's determination of the facts). For this inquiry, courts focus on whether the decision is supported by substantial evidence, which is more than a scintilla but less than a preponderance. Id.

The existence of a conflict of interest may also be a factor in the abuse of

discretion analysis. A conflict may occur when the entity that administers the plan "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket." Metropolitan Life Ins. Co. v. Glenn, 128 S. Ct. 2343, 2346 (2008). As explained in Glenn,

> when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one. . . Any factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance. [A] conflict of interest . . ., for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

Glenn, 128 S. Ct. at 2351. However, "[i]n Glenn, the Supreme Court made clear the conflict does not change the standard of review applied by the district court." Hackett v. Standard Ins. Co., 559 F.3d 825, 830 (8th Cir. 2009).

### Procedural Irregularities

Initially, the Court will address plaintiff's contention that the denial of his benefits claim involved procedural irregularities that warrant reviewing the defendant's decision under a standard less deferential than the abuse of discretion standard. See Woo v. Deluxe Corp., 144 F.3d 1157 (8th Cir. 1998) (both procedural irregularity and a conflict of interest may warrant a review that is less deferential than the abuse of discretion standard). A procedural irregularity occurs when a decision is made "without reflection or judgment," and is "the product of an arbitrary decision or the plan administrator's whim." Parkman v. Prudential Ins. Co., 439 F.3d. 767, 772 n.5 (8th

Cir. 2006) (internal citations omitted). The mere presence of a procedural irregularity does not warrant a less deferential standard, however. Hillery v. Metropolitan Life Ins. Co., 453 F.3d. 1087, 1090 (8th Cir. 2006). Before a heightened standard of review may be applied, plaintiff "must show (1) that a serious procedural irregularity existed, which (2) caused a serious breach of the plan trustee's fiduciary duty to the plan beneficiary." Pralutsky v. Metropolitan Life Ins. Co., 435 F.3d 833, 838 (8th Cir. 2006) (quoting Buttram v. Central States, Southeast and Southwest Areas Health & Welf. Fund, 76 F.3d 896, 900 (8th Cir. 1996)).

After careful review, the Court finds the procedural irregularities claimed by plaintiff---*i.e.*, defendant's failure to provide requested documents---to be insufficient to trigger any heightened review that may be available following Metropolitan Life Ins. Co. v. Glenn, 128 S. Ct. 2343 (2008) (affirming use of the abuse of discretion standard).[1] Plaintiff has presented no evidence that the procedures followed by defendant in reviewing his claim were any different than those employed in reviewing the claims of other participants. See Hankins v. Standard Ins. Co., No. 4:11CV428, 2011 WL 5190815, *7 (E.D. Ark. 2011) (noting instances of procedural irregularities, which do not include the plan's "gathering and considering the substantive evidence."). Nor has he shown that the alleged irregularities resulted in a "serious breach" of the defendant's fiduciary duty. Id.

---

[1] Glenn abrogated the first basis for heightened review (conflict of interest) established by the Eighth Circuit in Woo, but did not address whether the second basis (procedural irregularities) may continue to trigger heightened review. Glenn, 128 S. Ct. 2343; Woo, 144 F.3d 1157. The Eighth Circuit has recently declined to address whether procedural irregularities can alter the standard of review following Glenn. See Hankins v. Standard Ins. Co., No. 4:11CV428, 2011 WL 5190815, *6 n.9 (E.D. Ark. 2011) (referring to Wrenn v. Principal Life Ins. Co., 636 F.3d 921, 924 n. 6 (8th Cir.2011)).

### Denial of Severance Pay Was Not an Abuse of Discretion

Applying the abuse of discretion standard, the Court finds that the decision to deny plaintiff severance pay was based on a reasonable interpretation of the severance benefits program. In the July 1, 2009 denial letter, plan administrator Boulicault wrote that the Program considered willful misconduct to include violations of company policy and that this was the reason that plaintiff was being denied benefits. In her August 21, 2009 correspondence, she explained that she considered violation of company policy to be willful misconduct. Boulicault's interpretation of the term "willful misconduct" is consistent with goals of the policy, does not render any language in the policy meaningless or internally inconsistent, does not conflict with the substantive or procedural requirements of ERISA, and is not contrary to the clear language of the policy or the Program's prior interpretations of the term. See Finley, 957 F.2d 617, 621.

The Court further finds that the decision to deny benefits was supported by substantial evidence. In reaching her decision on plaintiff's claim, the only document Boulicault considered was the Employee Separation Report. That report clearly states that plaintiff was discharged for violation of company policy. Contrary to plaintiff's assertion, Karrenbrock did not rely solely on the Employee Separation Report in reviewing plaintiff's appeal. Instead, Karrenbrock considered the August 27, 2009 appeal letter, which contained plaintiff's account of the events leading to his discharge, and conducted an independent review of the "facts and circumstances of [plaintiff's] termination." In conducting his review, Karrenbrock received information from the company's security personnel which reasonably led him to conclude that plaintiff had engaged in willful misconduct. It is noteworthy that none of the materials generated

in the investigation or considered in the review of plaintiff's claim indicate that plaintiff was discharged for any reason other than violation of company policy.

Plaintiff's claim of a conflict of interest is also unavailing. Plaintiff has submitted no evidence suggesting a history of biased decisions by the plan administrator. The conflict of interest claimed here---the defendant's role in paying benefits and administering the severance benefits program---is not a factor that "should prove more important (perhaps of great importance)" in the absence of such evidence. Glenn, 128 S. Ct. at 2351.

Plaintiff argues that his discharge was pretextual or in bad faith. He has not, however, put forth evidence as to what he believes the real basis for his discharge may have been. As such, the Court declines to treat plaintiff's pretext allegations as a claim for interference with his expected ERISA benefits. See 29 U.S.C. § 1140; Pendleton v. QuikTrip Corp., 567 F.3d 988 (8th Cir. 2009).

### Full and Fair Review Under 29 U.S.C. § 1133

Under ERISA, employee benefit plans must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). "In accordance with the authority of ... 29 U.S.C. [§ ] 1133," 29 C.F.R. § 2560.503-1 "sets forth minimum requirements for employee benefit plan procedures pertaining to claims for benefits." 29 C.F.R. § 2560.503-1(a); see also Midgett, 561 F.3d 887.

Plaintiff initially claims that he was not afforded a full and fair review by the because he did not receive the memo from Burke to Karrenbrock that was part of the administrative record. The Burke memorandum was generated in response to

plaintiff's appeal of Boulicault's denial of his claim. Thus, as the document was part of the record generated during the appeal process, plaintiff had no right to receive or respond to it prior to the final decision issued by Karrenbrock. Midgett, 561 F.3d 887 (8th Cir. 2009) ( "the full and fair review to which a claimant is entitled under 29 U.S.C. § 1133(2) does not include reviewing and rebutting, prior to a determination on appeal, the [evidence] solicited on that same level of appeal." Id. at 896).

Next, plaintiff argues that the decision failed to set forth the specific reasons for denying his benefits claim. This argument is without merit. Both the July 1 denial letter from Boulicualt and the December 21 final decision by Karrenbrock clearly stated that plaintiff was not entitled to severance benefits because he was fired for willful misconduct. Plaintiff cannot claim that he was not aware of the specific misconduct referred to in the decisions, as he writes in his June 25 letter he "strongly disagrees" with the denial of benefits and the reason given for his termination. While a more complicated basis for denying plaintiff's claim may have required a more detailed explanation, nothing more specific was necessary here. Id. at 896 ("29 C.F.R. § 2560.503-1(j) sets forth the requisite content of a notification of a benefit determination on review, and it does not require the plan administrator to discuss specific evidence submitted by the claimant.").

Lastly, plaintiff points to his second request for all relevant documents made after the issuance of the final decision. He claims that the failure to provide him with all relevant documents prevented him from receiving a full and fair review. Following his request, plaintiff was given a copy of the company policy that prohibited misappropriation of company property, but he was not given a copy of the Burke memo or any other documents Karrenbrock considered in the investigation of plaintiff's

appeal.  This failure to provide materials after the final decision, however, does not implicate the "full and fair" review provision of 29 U.S.C. § 1133 because plaintiff was not frustrated from obtaining the full administrative record and filing suit in federal court.  See Brown v. J.B. Hunt Transport Services, Inc., 586 F.3d 1079 (8th Cir. 2009) (violation of 29 U.S.C. § 1133 does not justify an award of damages, but procedural relief gauged to provide plaintiff with the full and fair review he was denied, *e.g.*, remand to the plan administrator, allowing plaintiff to file an appeal out of time, or excusing plaintiff's failure to exhaust administrative remedies).  Plaintiff did not seek a court order requiring defendant to produce documents and to pay a daily fine.  Further, the documents were timely produced during the discovery process.

\* \* \* \* \*

For the reasons discussed above, the Court concludes that the plaintiff was given a full and fair review of his claim and the decision denying benefits was not an abuse of discretion.  As such, summary judgment in favor of defendant on Count I is appropriate.  Midgett, 561 F.3d at 898.

Accordingly,

**IT IS HEREBY ORDERED** that the defendant's motion for summary judgment on Count I of the complaint [Doc. # 49] is **granted**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment on Count I of the complaint [Doc. # 46] is **denied**.

**IT IS FURTHER ORDERED** that the motion by plaintiff to strike affidavits submitted by defendant [Doc. #79] is **moot**.

A separate judgment in accordance with this Memorandum and Order will be entered.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 29th day of December, 2011.